IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>MORRIS SENIOR LIVING, LLC, et al.,<br><br>    Debtors.<br><br>---<br><br>MORRIS HEALTHCARE<br>& REHABILITATION CENTER, LLC, and<br>LEWIS BORSELLINO,<br><br>    Appellants,<br><br>    vs.<br><br>BRAD A. BERISH, individually and in his<br>capacity as counsel for the Trustee for<br>the estate of MORRIS SENIOR LIVING,<br>LLC., and GREGG SZILAGYI,<br><br>    Appellees. | No. 14 C 1411<br>(Appeal from Bankruptcy<br>No. 12-05364) |

# MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

    Morris Senior Living LLC, which operated a skilled living facility (SLF) in Illinois, filed for bankruptcy on February 14, 2012. On April 2, 2012, the bankruptcy court appointed a trustee. Following the bankruptcy proceedings, Lewis Borsellino, a former manager of Morris Senior Living, and Morris Healthcare & Rehabilitation Center LLC, both of which claim to have owned the certificate needed to operate the SLF, moved the bankruptcy court for leave to sue the trustee's counsel in his individual capacity for

damages for fraudulent inducement. On January 24, 2014, the bankruptcy court denied the motion on the ground that Borsellino and Morris Healthcare failed to make out a *prima facie* case of fraudulent inducement.

Borsellino and Morris Healthcare have appealed from the bankruptcy court's order. They contend that they made out *prima facie* cases for both fraudulent inducement and conspiracy to interfere with their civil rights under 42 U.S.C. § 1985(3). For the reasons stated below, the Court affirms the bankruptcy court's order.

## Background

### A.     Procedural history

The appellants maintain that Morris Healthcare acquired an SLF certificate for Morris Senior Living on September 6, 2006. They point to an IDHFS letter "approv[ing] the application" that Morris Healthcare had submitted seeking "a change of ownership for Grundy County Home in Morris . . . ." Appellants' Ex. S at 1.

After Morris Senior Living filed for bankruptcy on February 14, 2012, Northbrook Bank and Trust Company became its new owner by acquiring all of the LLC's membership interests. On March 1, 2012, the bank's counsel filed a Freedom of Information Act (FOIA) request for "a copy of the SLF applications for Morris Senior Living" and "any notices provided to [the Illinois Department of Healthcare and Family Services (IDHFS)] that indicated a change of ownership," to confirm the owner of the SLF certificate for Morris Senior Living. Appellants' Ex. X at 1. On March 5, 2012, the IDHFS e-mailed Morris Healthcare to inform it of the FOIA request and that "[a]n SLF owner can request that proprietary information in the application . . . be excluded from the FOIA response." Appellants' Ex. W. The IDHFS then asked Morris Healthcare to

2

"let [it] know if [it] would like these excluded from the FOIA response for proprietary reasons," indicating that it understood Morris Healthcare owned the SLF certificate for Morris Senior Living at that time.  *Id.*  On March 16, 2012, the IDHFS sent the bank's counsel a copy of Morris Healthcare's 2006 application for a change in the facility's approved location.  Appellants' Ex. X.

On April 2, 2012, the bankruptcy court appointed a trustee for Morris Senior Living, finding that it was "in the best interests of creditors, any equity holders and other interests of the estate, namely the residents of the debtors' facility."  Appellees' Ex. G at 16.  On May 15, 2012, the trustee's counsel filed an "APPLICATION FOR A **CHANGE OF OWNERSHIP** UNDER THE SUPPORTIVE LIVING PROGRAM," which listed "Morris Senior Living, LLC" under "Applicant (Proposed New Owner)," but identified no current or former owner.  Appellants' Ex. E.  The next day, Morris Healthcare filed an action against Northbrook Bank and Trust in Grundy County state court, seeking, among other things, a declaration that Morris Healthcare owned the certificate.  That day, the bank removed the action to the bankruptcy court as an adversary proceeding.  On July 2, 2012, the trustee filed a motion seeking to intervene in that proceeding as a defendant and to assert a counterclaim seeking a declaratory judgment that Morris Senior Living, not Morris Healthcare, owned the certificate.  The appellants allege that "the Bank and the Trustee's counsel repeatedly stated in the bankruptcy court, in writing and under oath[,] that the Debtor Morris Senior Living always owned the SLF Certification prepetition."  Appellants' Opening Br. ¶ 7.

On July 31, 2012, the IDHFS e-mailed Morris Healthcare, the trustee's counsel, and others to "recommend[ ] that the certification for Morris Senior Living (the Facility)

3

be withdrawn from Morris Healthcare and the Department review the pending request by the trustee to change ownership (and certification) of the facility." Appellants' Ex F at 1. On August 7, 2012, the parties agreed to stay the adversary proceeding until the IDHFS could conduct an administrative hearing to determine the owner of the SLF certificate.

On December 12, 2012, the IDHFS filed a "Notice of Intent to Terminate Certification/Provider Agreement and Right To Hearing. . . ." Appellants' Ex. H at 1. In this document, the IDHFS stated that it proposed "to terminate the certification and provider agreement of Morris Senior Living (Vendor) aka Morris Senior Living, LLC and Healthcare & Rehabilitation Center, LLC [sic], to operate Morris Senior Living." *Id.* In the attached "allegations of noncompliance," the IDHFS stated that the

> reason for the determination that Morris Healthcare and Rehabilitation Center, LLC owned the certificate . . . was that the Department believed that the owners of Morris Healthcare and Rehabilitation Center, LLC and Morris Senior Living, LLC were the same individuals, Lewis Borsellino and Kimberly Westerkamp, hence Morris Healthcare and Rehabilitation Center, LLC was deemed by the Department to be the owner of the certification based on Morris Senior Living being an enrolled provider. Subsequently discovered information showed that Lewis Borsellino and Kim Westerkamp were not the owners of Morris Senior Living, on or about April 26, 2012 . . . .

Appellants' Ex. H at 7-8. On January 8, 2013, the IDHFS advised the trustee that it had approved his application for a change of ownership for Morris Senior Living, "effective February 15, 2012." Appellants' Ex. L. The following day, the IDHFS withdrew the matter from the administrative hearing process without prejudice.

On January 14, 2013, Morris Healthcare filed suit against the IDHFS in Grundy County and moved for a temporary restraining order to prevent the IDHFS from

4

transferring the SLF certificate from Morris Healthcare to Morris Senior Living. The Grundy County state court granted the requested order on January 18, 2013. Appellants' Ex. P. The trustee then filed a motion before the bankruptcy court contending that Morris Healthcare had violated the automatic stay by filing and prosecuting the Grundy County suit. On March 5, 2013, the bankruptcy court found that Morris Healthcare had violated the stay and ordered it to dismiss its state court action. On October 22, 2013, this Court affirmed the bankruptcy court's order in this regard. *In re Morris Senior Living, LLC*, Nos. 13 C 2457, 13 C 2064, 2013 WL 5753834, at *11 (N.D. Ill. Oct. 22, 2013).

The appellants maintain that trustee's counsel failed to disclose at the March 5, 2013 hearing that Morris Healthcare owned the SLF certificate. This contention is at least part of the basis for their request to sue the trustee's counsel.

**B.    Appellants' motion for leave to sue the trustee's counsel**

On December 2, 2013, the appellants filed in bankruptcy court an amended motion for leave to sue trustee's counsel in his individual capacity, "seeking only a money judgment."[1] Appellants' Opening Br. ¶ 2. The appellants asserted what they called a fraudulent inducement claim, arguing that trustee's counsel had failed to disclose that Morris Healthcare owned the SLF certificate for Morris Senior Living "despite all of [the] evidence" that he was "completely aware of." Appellants' Am. Mot. for Leave ¶ 32. The appellants focused on two occasions: April 2, 2012, when the

---

[1] The appellants also moved for leave to sue the IDHFS and the bank's counsel. The bankruptcy court declined to rule on this motion on the ground that it lacked the authority to decide that issue. *In re Morris Senior Living, LLC*, 504 B.R. 490, 495-96 (Bankr. N.D. Ill. 2014).

5

bankruptcy court appointed the trustee, and March 5, 2013, when the court found Morris Healthcare had violated the stay. The appellants also claimed that trustee's counsel knowingly "made a false statement to the bankruptcy court that the Debtor Morris Senior Living LLC was the owner of the SLF Certificate prepetition, as described above," suggesting that he made the statement on both of those occasions. *Id.* ¶¶ 33-34. The appellants alleged that "Trustee's counsel made this false state [sic] to induce the court to allow the Trustee to deprive Morris Healthcare and Borsellino of their property" and that "the court permitted Trustee's counsel to wrongfully deprive Morris Healthcare and Borsellino of their property without just compensation or due process." *Id.* ¶¶ 35-36. The appellants offered the bankruptcy court essentially the same facts and evidence as discussed in the procedural history section of this decision.

In their reply brief filed in the bankruptcy court, the appellants stated that "the first legal claim against the Trustee's counsel and the Bank's counsels is fraudulent inducement." Appellees' Ex. D ¶ 4. They also added a "second legal claim against the trustee's counsel and the Bank's counsels . . . for conspiring with state actor to deprive Plaintiffs of their procedural due process; under 42 U.S.C. § 1985(3) . . . ." *Id.* ¶ 6. The appellants specified that "[T]rustee's counsel and the Bank's counsels conspired with an agent of IDHFS to deprive Morris Healthcare of its SLF certificate, without procedural due process, by changing the ownership of the SLF Certificate from Morris Healthcare to the Debtor Morris Senior Living while this bankruptcy was pending." *Id.* ¶ 3.

**C.   The bankruptcy court's January 24, 2014 order**

In considering the appellants' motion for leave to sue the trustee's counsel, the bankruptcy court first acknowledged that "[a] bankruptcy trustee owes fiduciary duties to

6

the debtor's estate and its creditors." *In re: Morris Senior Living*, 504 B.R. at 491. "'[A]s to the extent these duties are owed by Special Counsel for the Trustee,'" the court stated, "'it will be assumed that fiduciary duties of any counsel for Trustee to the estate and its creditors are the same as those due from the Trustee.'" *Id.* at 491-92 (quoting *In re Kids Creek Partners, L.P.*, 248 B.R. 554, 560 (Bankr. N.D. Ill. 2000).

The bankruptcy court found that the appellants had offered no proof of any of the five elements needed to make a *prima facie* case for fraudulent inducement: 1) a false statement of material fact; 2) known or believed to be false by the party making it; 3) made with an intent to induce the other party to act; 4) action by this other party in reliance on the truth of the statement; and 5) consequent damage to the other party. *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003). *See also Merrilees v. Merrilees*, 2013 IL App (1st) 121897, ¶ 30, 998 N.E.2d 147, 158 (2014).

The court addressed each element in turn, finding that "the record herein does not show that a false statement was made, or what fact was not disclosed, about ownership of the SLF Certificate . . . ." *In re: Morris Senior Living,* 504 B.R. at 494. In this regard, the court stated that "[m]any parties expressed confusion about this issue." *Id.* The court also noted that the appellants had "asserted no authority for their position that the attorneys had a duty to disclose information." *Id.* As for the second element, the court stated simply that "[t]here is no description of the statement alleged to be false, nor an indication that the person making it knew or believed it to be false." *Id.* The court concluded on the third element that the appellants "proffered no evidence, direct or circumstantial, on whether the trustee's attorney had an intent to induce the other party to act." *Id.* On this point, the court observed that the appellants "allege[d]

7

that the *court* was falsely induced to allow the trustee to deprive Morris Healthcare of its property without just compensation or due process. The trustee appointment did not deprive the Movants of their property without just compensation; they had notice and an opportunity to be heard." *Id.* at 495 (emphasis added). As for the fourth element, the court found that the appellants had "alleged no acts taken by them in reliance on the truth of a statement made by the trustee's attorney," as they "have consistently asserted that Morris Healthcare owned the SLF Certificate and their conduct in this case has been consistent with their assertion that Morris Healthcare owned it." *Id.* The court also found that the appellants had incurred no damages, because there was "no suggestion that Morris Healthcare's SLF Certificate was given to another entity." *Id.* Aside from finding that the appellants received notice and an opportunity to be heard in the context of appellants' fraudulent inducement claim, the bankruptcy court neither acknowledged nor addressed appellants' assertions under section 1985(3).

Based on these determinations, the court denied appellants' amended motion for leave to sue trustee's counsel. In a footnote, the court also "caution[ed] that the efforts in this matter c[a]me perilously close to warranting sanctions under Federal Rule of Bankruptcy Procedure 9011(b)(2) and (3)." *Id.* at n. 1.

### D. Appeal from bankruptcy court's January 24, 2014 order

On February 27, 2014, the appellants appealed to this Court. They contend that they stated a *prima facie* case for both fraudulent inducement and conspiracy to interfere with their civil rights. As the appellees observe, the appellants use "fraudulent inducement" interchangeably with "fraud on the court," a term that does not appear in any of their briefs filed before the bankruptcy court. *See, e.g.*, Appellants' Opening Br.

¶ 41 ("the proposed claims are against the Trustee's counsel, but if during discovery the Trustee is shown to have knowledge of the fraud on the court . . . then claims will also be brought against the Trustee himself."). At times the appellants use the terms in tandem, referring to a single claim. *See, e.g.*, *id.* ¶ 42 ("To state a *prima facie* case for fraudulent inducement on the court . . . .").

The appellees deny that the appellants have made out a *prima facie* case for either fraudulent inducement or conspiracy to interfere with their civil rights. They contend that appellants also have "not properly pled the existence of a claim for fraud on the court." Appellees' Resp. Br. at 27. The appellees ask the Court to affirm the bankruptcy court's order on the additional ground that trustee's counsel is immune from all allegations of wrongdoing "because all complained-of actions were blessed by orders of the Bankruptcy Court," and appellants failed to allege that counsel "acted *ultra vires* or breached a fiduciary duty to Appellants." *Id.* at 14, 19.

The Court also notes that on July 11, 2014, after the conclusion of briefing in this appeal, the IDHFS issued a final decision in the matter of the ownership of the SLF certificate for Morris Senior Living. *See* Ill. Dep't of Healthcare and Family Servs., 12 MVH 358 (Jul. 11, 2014). The agency found that Morris Healthcare lacked standing to contest the IDHFS's attempt to terminate the facility's certification and provider agreement because it failed to show that it owned the SLF certificate.

### Discussion

**A.     Legal standards**

    **1.     Leave to sue trustee's counsel**

Although the Bankruptcy Code does not expressly require leave of court to sue a

bankruptcy trustee for his conduct as trustee, 28 U.S.C. § 959(a) assumes this is required ("Trustees . . . may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property"), and "[a]n unbroken line of cases . . . has imposed the requirement as a matter of federal common law." *Matter of Linton*, 136 F.3d 544, 545 (7th Cir. 1998). *See In re VistaCare Grp., LLC*, 678 F.3d 218, 227 (3d Cir. 2012) (internal quotations omitted) ("In contrast, where a trustee acting in his official capacity conducts no business connected with the property other than to perform administrative tasks necessarily incident to the consolidation, preservation, and liquidation of assets in the debtor's estate . . . leave of court is still required before filing suit against the trustee.").

Bankruptcy courts in the Northern District of Illinois and other circuits have applied the leave of court requirement to proposed suits against a trustee's counsel. *In re Kids Creek Partners, L.P.*, 248 B.R. at 558 ("Prospective plaintiffs should obtain leave of the court in which the trustee was appointed before they may sue a bankruptcy trustee and his or her counsel in a non-appointing forum."); *In re Berry Pub. Servs., Inc.*, 231 B.R. 676, 679 (Bankr. N.D. Ill. 1999) ("The Barton doctrine requires leave of the appointing court before suit can be brought against a bankruptcy trustee or his counsel."). *See also In re McKenzie*, 716 F.3d 404, 411 (6th Cir. 2013) (internal quotation marks omitted) ("it is important to note that GKH's appeals . . . have not challenged the bankruptcy court's application of the same standards to the Trustee and his attorneys. As a matter of law, counsel for trustee . . . . are the functional equivalent of a trustee. . . ."); *McDaniel v. Blust*, 668 F.3d 153, 157 (4th Cir. 2012) ("for the Barton doctrine to apply to a suit against a bankruptcy trustee's attorneys, we know of no

reason why the trustee must have directed counsel to take the specific actions that are the subject of the suit.").

### 2. Abuse of discretion

A bankruptcy court's denial of leave to sue a trustee or trustee's counsel is reviewed for abuse of discretion. *In re USA Baby, Inc.*, 520 Fed. App'x 446, 448 (7th Cir. 2013) (concluding that the district court did not abuse its discretion in denying appellant's motion for leave to sue bankruptcy trustee for actions taken as a trustee); *In re Linton*, 136 F.3d at 546 ("The remaining question is whether the bankruptcy judge abused his discretion . . . which is the standard governing our review of such a ruling . . . in refusing to allow the plaintiffs to sue in state court."). A bankruptcy court abuses its discretion when "its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." *Wiese v. Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir. 2009). "Reviewing courts should accord significant deference to the determinations of the bankruptcy court, which, given its familiarity with the underlying facts and the parties, is uniquely situated to determine whether a claim against the trustee has merit." *In re VistaCare Grp.*, 678 F.3d at 233.

### 3. *Prima facie* showing

A party seeking leave of court to sue a trustee (or trustee's counsel) "must make a *prima facie* case against the trustee, showing that [the party's] claim is not without foundation." *In re Nat'l Molding Co.*, 230 F.2d 69, 71 (3d Cir. 1956). *See also In re Weitzman*, 381 B.R. 874, 880 (Bankr. N.D. Ill. 2008) ("Generally, the court should not give its permission unless it is convinced that the movant has a *prima facie* case against

11

the trustee."), *In re Weisser Eyecare, Inc.,* 245 B.R. 844, 848 (Bankr. N.D. Ill. 2000) ("Before leave to sue a trustee may be obtained, the claimant must be able to plead the elements of a prima facie case against the trustee."). "In evaluating whether the *prima facie* standard has been satisfied the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (internal quotation marks omitted).

**B.    Fraudulent inducement**

As the Court has stated, to make out a *prima facie* case of fraudulent inducement, a party must offer evidence of:  1) a false statement of material fact; 2) known or believed to be false by the party making it; 3) made with an intent to induce the other party to act; 4) action by this other party in reliance on the truth of the statement; and 5) consequent damage to the other party.  *Hoseman*, 322 F.3d at 476. *See also Merrilees*, 2013 IL App (1st) 121897, ¶ 30, 998 N.E.2d at 158.  The bankruptcy court found that the appellants failed to provide evidence of any of the elements, but this Court need only address one of them.

In addressing the first element, the bankruptcy court determined that the record did not show *prima facie* that trustee's counsel made a false statement.  In their amended motion for leave, the appellants stated that "[d]uring a court hearing on April 2, 2012, the Bank's counsel . . . fraudulently induced the court to believe that [Morris Senior Living LLC] does own the license to operate the SLF," citing the transcript for that hearing.  Appellants' Am. Mot. for Leave ¶ 18.  The appellants were not, however, seeking to sue the bank; rather they were asking to sue the trustee's counsel.  With regard to the trustee's counsel, the appellants offered only an unsupported

12

generalization: "[t]he trustee's counsel made a false statement to the bankruptcy court that the Debtor Morris Senior Living LLC was the owner of the SLF Certificate prepetition, as described above." *Id.* ¶ 33.

In the paragraph that the appellants indicate describes the trustee's counsel's false statement, they discuss only his alleged failure to disclose information (which this Court addresses below), rather than any affirmative misrepresentation, during the April 2, 2012 and March 5, 2013 bankruptcy court hearings. The trustee's counsel could not possibly have made a false statement to the court during the April 2012 hearing because that was the hearing when the bankruptcy court first appointed the trustee, meaning there *was no* trustee's counsel yet. Further, the transcript of the March 5, 2013 hearing suggests no misrepresentation along the lines claimed by the appellants. In fact, all that the trustee's counsel said at that hearing with regard to the ownership of the SLF certificate was that "the state would be initiating an administrative hearing to determine that issue," indicating, at most, that the issue remained unresolved at that time. Appellants' Ex. T at 21.

The appellants state that "Trustee's counsel made th[e] false statement [that the Debtor owned the SLF Certificate] in his Motion, Exhibit B, together with its Exhibit # 4, which intentionally misrepresented the fact of who owns the SLF Certificate." Appellants' Opening Br. ¶¶ 48-49. But neither party's exhibit B contained anything of the sort. Appellants' exhibit B consisted of their amended motion for leave and certain IDHFS documents (appellants seem to be missing exhibit C). Appellees' exhibit B was this Court's May 9, 2013 order.

In short, the bankruptcy court's determination that appellants did not make a

13

*prima facie* showing that the trustee's counsel made a false statement was not based on clearly erroneous factual findings.

On the issue of fraudulent omission, the bankruptcy court found that the record did not show "what fact was not disclosed." *In re Morris Senior Living*, 504 B.R. at 494. That does not appear to be the case. In their amended motion for leave, the appellants described what they were referring to; they stated that from "July 31, 2012, to now, the Trustee's and Bank's counsels still failed to disclose to the bankruptcy court that Morris Healthcare was the owner of the SLF certificate . . . ." Appellants' Am. Mot. for Leave ¶ 21. That said, the bankruptcy court correctly observed that the appellants "asserted no authority for their position that the attorneys had a duty to disclose information." *In re Morris Senior Living*, 504 B.R. at 494. The Court also notes that given the somewhat confused state of affairs regarding ownership of the SLF certificate, as further discussed in the next section, any claimed omission along these lines could not have been knowingly fraudulent.

The Court concludes that the bankruptcy court did not abuse its discretion in holding that the appellants failed to show the first element of their fraudulent inducement claim. Because the appellants are required to offer evidence of all five elements of fraudulent inducement to make out a *prima facie* case, the Court's conclusion in this regard is sufficient to warrant affirming the bankruptcy court's decision. Thus the Court need not address the remaining elements.

**C.     Fraud on the court**

As discussed above, the bankruptcy court addressed the appellants' claim as one of "fraudulent inducement"—in other words, as a claim that they (or some other

14

litigant) were induced to act in a particular way in reliance on fraudulent misstatements or omissions.  That is certainly understandable, because that is the terminology that the appellants used before the bankruptcy court.  It is more likely, however, that the appellants actually were asserting what one might more precisely call a claim of "fraud on the court," in other words, a claim that an opposing litigant (the trustee's counsel) fraudulently induced the court to issue a decision in the litigant's favor.  Because the appellants did not use this term before the bankruptcy court, they arguably forfeited the point, even though they have used the term in their briefs on appeal.  "Arguments not raised in the bankruptcy court are forfeited on appeal."  *In re Cohen*, 507 F.3d 610, 614 (7th Cir. 2010).  The Court nonetheless will address whether the appellants ought to have been allowed to proceed with a fraud on the court claim.

"The term 'fraud on the court' is not defined in Rule 60 or elsewhere in the federal rules, and the definition most often offered by the courts (including our own) [is] that it consists of acts that defile the court," including "bribery of a judge or exertion of other undue influence on him . . . and fraudulent submissions by a lawyer for one of the parties in a judicial proceeding, such as tendering documents he knows to be forged or testimony he knows to be perjured."  *In re Golf 255, Inc.*, 652 F.3d 806, 809 (7th Cir. 2011) (internal quotations marks omitted).  In short, "[t]he cases where it has been found have involved the most egregious conduct " and "far more than an injury to a single litigant."  *Matter of Whitney-Forbes, Inc.*, 770 F.2d 692, 698 (7th Cir. 1985). *Baltia Air Lines, Inc. v. Transaction Mgmt, Inc.*, 98 F.3d 640, 643 (Fed. Cir. 1996) (internal quotation marks omitted).

"[M]oney damages . . . is at odds with a fraud on the court claim, for which the

15

remedy is the setting aside of the fraudulently obtained court judgment." *In re: Farmland Indus., Inc.*, 639 F.3d 402, 405 (8th Cir. 2011). And equitable relief is only "where it would be manifestly unconscionable to allow the judgment to stand. . . ." *Superior Seafoods, Inc. v. Tyson Foods, Inc.*, 620 F.3d 873, 878 (8th Cir. 2010) (internal quotation marks omitted).

The appellants ' allegations of false statements to the bankruptcy court regarding the SLF certificate simply do not rise to the level necessary to sustain a fraud on the court claim. *See Oxxford Clothes XX, Inc. v. Expeditors Int'l of Washington, Inc.*, 127 F.3d 574, 578 (7th Cir. 1997) (finding that fraud on the court "refers to conduct far more egregious than," among other things "misrepresenting to the district court that [Expeditors] had valid liens"). As the bankruptcy court concluded in addressing the fraudulent inducement claim, the circumstances regarding the ownership of the SLF certificate were murky enough that one could not reasonably say that the matters cited involved knowingly false statements or knowing omissions of material fact. Further, the appellants made it clear that they are "seeking only a money judgment . . . ." Appellants' Opening Br. ¶ 2. As the Court has indicated, this is inconsistent with a claim of fraud on the court, the upshot of which is not a monetary award, but the setting aside of the judgment or ruling in question. In sum, even if the appellants had not forfeited a claim of fraud on the court by failing to address it properly before the bankruptcy court, they nonetheless failed to make out a *prima facie* case supporting such a claim.

### D. 42 U.S.C. §1985(3)

The bankruptcy court did not address whether the appellants made a *prima facie* case for conspiracy to interfere with their civil rights under 42 U.S.C. § 1985(3),

presumably because they waited until their reply to assert the claim. As the appellees point out, "it is well-established that arguments raised for the first time in the reply brief are waived." *Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011). The appellants imply that the bankruptcy court erred in not ruling on their section 1985(3) claim because "the facts alleged in the motion specifically describe Appellees' conspiracy with a state actor to deprive Appellants of their procedural due process rights." Appellants' Reply Br. ¶ 4. The appellants maintain that both the appellees and bankruptcy court addressed their section 1985(3) argument, with the appellees stating that trustee "did not, and could not, seek to transfer the Certificate from the Movant to the Debtor" and the court finding that appellants had "notice and an opportunity to be heard." Appellants' Reply Br. ¶ 5. *In re Morris Senior Living,* 504 B.R at 495.

Appellants confuse a complaint, in which they would be expected only to state the factual allegations supporting a claim, with a brief, which is what a court would rely on in this context to understand and weigh a party's legal arguments. *See* Appellants' Reply Br. ¶ 7 ("The *Twombly* Court explained that Rule 8 of the Federal Rules of Civil Procedure requires that a complaint include facts (as distinct from legal 'labels' and 'conclusions')"); *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011) ("A complaint need not identify legal theories"). By failing to address the point in their opening brief before the bankruptcy court, appellants forfeited it. "[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues." *United States v. Hassebrock*, 663 F.3d 906, 914 (7th Cir. 2011) (internal quotation marks omitted). The statements by appellees and bankruptcy court that the appellants cite were made in the

context of discussing the appellants' fraudulent inducement claim, which included an assertion that trustee's counsel lied to the court to deprive them of their property.

In any event, the appellants failed to come anywhere near making out a *prima facie* case supporting a claim under section 1985(3).

> To recover under § 1985(3), a party must establish: (1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the alleged conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens.

*Xiong v. Wagner*, 700 F.3d 282, 297 (7th Cir. 2012). "To establish purpose under prong two, a plaintiff must demonstrate racial, ethnic, or other class-based invidiously discriminatory animus behind the conspirators' actions." *Id.* (internal quotation marks omitted). The appellants have not once alleged that either trustee's counsel or the IDHFS agent with whom he is said to have conspired acted with the necessary discriminatory animus. Rather, the appellants allege a financial motivation, which is not enough under section 1985(3). *See, e.g.*, Appellants' Opening Br. ¶ 55 ("The Trustee's counsel . . . benefitted financially in having the Debtor own the SLF Certificate by obtaining more fees, operating the Facility, and having the full amount of loan in lump sum via a sale and the fees from the operation of the Facility and its sale . . . .").

## Conclusion

For the foregoing reasons, the Court affirms the bankruptcy court's January 24, 2014 order denying the appellants leave to sue trustee's counsel.

                                                                 _____
                                                                 MATTHEW F. KENNELLY
                                                                United States District Judge

Date: September 25, 2014